We'll turn to the last case to be heard today, which is New York Times Company v. U.S. Department of Health and Human Services. Thank you, Your Honor. Good morning. May it please the Court, this is Jennifer Simon for the government. At issue in this appeal is whether a report commissioned by the Indian Health Service to identify and address systemic failures in the provision of medical care to its patients falls within the scope of 25 U.S.C. 1675. It does, and the report was accordingly properly withheld by the agency under FOIA Exemption 3. Do you think by calling it, I have it in front of me, a medical quality assurance review, it makes it so? That alone is not what puts the report within the scope of 1675. Then tell me what does. What puts it within the scope of 1675 is that it was meant to address medical failures at IHS facilities. Weber's conduct at these facilities. Administrative failures, supervisory failures, were they medical failures per se, what we would think of bad care for a patient? It was all of the above. What we see in Weber's criminal conduct, and it was not just a failure of administrative procedures, what we see is a failure to provide medical care in an egregious way. Simon, correct me if I'm wrong. I know it was a 156-page, single-spaced report. Maybe I missed it, but I don't think there's any reference other than calling it, as Judge Porter pointed out, a medical quality assurance review multiple times in the report. Putting those aside, I didn't see any reference, zero, to a medical diagnosis, a medical treatment, a medical procedure, or any reference to the quality of medical care in the entire report. Am I correct about that? You are correct. I believe that the report itself does not expressly use the term medical, but that is not what 1675 does. It's much broader than that. And what you see in the text of the statute is- It says any activity, but to assess the quality of medical care. So if there's no reference to medical care, there's no reference to medical diagnosis, no reference to medical treatment or procedure, how can that be an assessment of the quality of the medical care? I understand, obviously, what the report was about and the criminal actions, but there was no linkage of that to any type of deprivation as it related to conditions or illnesses that the patients were suffering at the facilities, right? But the sexual abuse of these minor patients must be understood not just as criminal conduct, it must be understood as a failure to provide medical care. And this is something that the medical community widely acknowledges. And as we cite in our brief- The district court said then construction of a building, something happens in the building, patients are injured because there's a collapse of something in the building, that would be a denial of medical care because of the construction, they didn't get the medical care, they should have been provided. Isn't that really how broad you're asking this to be construed? No. And look, I understand there may be gray areas around the edges, but that's not what we have here. What we have here is a physician who gained access to his victims by virtue of his relationship to them as their doctor. Some of the abuse occurred at IHS facilities during scheduled appointments. His abuse is inseparable from the failure to provide medical care. These patients sought care from IHS facilities, but the very person tasked with- So if you had a mentally unstable doctor who walked into the hospital and shot a patient, for example, that you would say would also- an investigation into how the hospital didn't understand that that doctor was mentally unstable and didn't see warning signs, you would say that would be confidential because it's a medical quality assurance review, a shooting? Again, that's quite different than what we have here. Here we have a doctor who is supposed to be treating patients, who is specifically assigned to those patients to provide medical care, and he fails to do so, instead physically harms them. That is absolutely criminal conduct, but it is also an abject failure to provide medical care. And it's this second piece that this report was meant to address. It may be a failure to provide medical care by that doctor, but if the report doesn't deal with any assessment of the medical care, why shouldn't that be considered in the overall analysis? Don't you see that distinction? It was during a doctor- It was through a doctor-patient relationship, but if the criminal behavior- If the analysis looks at the criminal behavior and how it happened and how it wasn't prevented, but does not look at issues of medical care, why shouldn't that be the line? If it's an investigation of criminal actions unrelated to looking at the quality of the those patients occurred during their relationship with the doctor, why is that not where the line should be? Because the report is addressing the failure of medical care. The report is not attempting to figure out the appropriate criminal sanction against Weber. What it is trying to do is figure out what to do about the failure of medical care. So in other words- No, no, no. The report is trying to figure out how to prevent sexual abuse by doctors, criminal behavior. It's not addressing issues of medical care. It's trying to say, how do we detect and prevent criminal behavior by a doctor? That's what the whole report is all about. Respectfully, your honor, it is trying to protect patients within its care, and that is squarely within medical care as the medical community recognizes. That's why you see HHS defining sexual abuse as a shocking medical error. It's why you see CMS defining patient safety as protecting them from abuse, and it's why you see the New York legislature similarly defining the investigations of sexual abuse as an investigation into a medical quality assurance, as a medical quality assurance review. And here, what you see in this report is an attempt to similarly protect these patients from a serious failure to provide medical care, not just in Weber's conduct. All of that is, of course, relevant, but also in the reporting structures that were in place at this facility. These are the procedures and policies that should have protected the patients from this harm, that should have allowed them to receive quality medical care. Counsel, this report was triggered in part by writings in the Wall Street Journal. Is that correct? I believe the information about... I can't speak to exactly all of the defectors that... I think it was one of the triggers, that and the PBS documentary. So do you think it's ironic that the Wall Street Journal can't get a copy of this report, since they were instrumental in bringing it about? Or is irony not something that Department of Health cares about? The function of 1675 is not to provide a mechanism for an agency to respond to... Let me start over, if you don't mind. 1675 isn't a way for the agency to respond to revelations in the press. That's not what it's about. That is irrelevant. What is relevant is it allows the is what 1675 is. It's Congress's efforts to ensure that when an agency becomes aware of allegations of these sorts, whether it's through the Wall Street Journal or a PBS special, it's irrelevant. But when an agency becomes aware of these sorts of problems, 1675 is designed to encourage this sort of response. It is designed to encourage a review of what went wrong, a full candid assessment of the problems that led to the harms of these patients and how to correct it going forward. And that's exactly right. And that little paragraph that you just recited, you didn't talk about the quality of medical care at all. The point of 1675 is whether the allegations are about sexual abuse or some other failure to provide medical care, my point is simply that it doesn't matter how the agency became aware of those problems. At the end of the day, what 1675 allows the agency to do is to look into what happened and how to prevent it going forward. Isn't the purpose of that to protect the private and encourage openness as it relates to medical care itself? And that could be redacted if there wasn't any of those types of things in this report, it could be redacted. But since there are no references to individual illnesses and conditions that patients suffer and their treatment for those conditions, they wouldn't even need redactions for that. The purpose of the statute is not simply to retain the confidentiality of the medical records of the underlying diagnoses. The purpose is to encourage a fulsome assessment by the participants. In other words, to get as a candid a review of any failures in the provision of medical care. I want to ask you one procedural question. I see the time is up with Judge Cabranes' permission. Didn't the governor file the notice of appeal a little early here? I'm concerned that there is still the exemption six issue where there's going to be redactions. I saw that you put in some redactions. Why didn't you wait until you fully litigated whether there's some dispute about those redactions? Because it could result in piecemeal appeals, right? Uh, Judge Gorenstein dictated the schedule and indicated that the stay of the order to produce the document would only last as long under this time frame if we made an appeal within this time frame. And so that that is what dictated the schedule we were operating under. Okay. Counsel, I have a simple question. What do you hope to achieve on this appeal? That is, what's the decreed language that you seek from us? Or what decree do you expect us to issue? We are seeking a reversal of the district court's opinion that exemption three does not cover, that does not justify the withholding of this document. In other words, that this document, this report is properly withheld under exemption three because it falls within the scope of 1675. And you think this is subject to a simple legal conclusion by our court rather than a remand for further proceedings? Yes, your honor. But wait, don't we have to remand so that you can litigate the redactions? Right. Assuming we affirm Judge Gorenstein, you would have the right to redact. That's correct. So in other words, under exemption three and 1675, the document is properly withheld in full. The agency, there are of course, individual names within the document that would be redacted under exemption six if the document were not withheld in full under Now, this document is characterized as a medical quality assurance review, and you're relying heavily on that characterization by the agency itself, right? It's not simply the characterization of the agency, although it is relevant that they undertook it in that fashion. In other words, that from the outset in the solicitation of bids and in the contract with the entity that ultimately did the review, those confidentiality provisions were critical in those decisions. But that alone is not the basis of our argument. In other words, looking independently at the review that was conducted and the report that emanated from that review, it falls squarely within the scope of 1675. Thank you. All right. We'll hear from opposing counsel. Hello. We have counsel for your time. You're on mute. Mr. Kelly, you're representing both petitioners. Council. Mr. Kelly, are you representing both the Times and the War Picture? Yes, Judge Pooler. I am representing all three appellees. Oh, okay. All right. The reporter is listed too, right? I think that Judge Bianco and Judge Pooler, you put your finger directly on the core issue here. And the core issue here is that the Integritas Report is not about medical quality. It's about misconduct by administrators who allowed an Indian Health Service employee to sexually abuse children over the course of decades. That's why this report is not covered by Section 1675, which as noted, applies only to assessments of the quality of medical care. This is not an assessment of the quality of medical care. It's an assessment of the misconduct and failures by IHS administrators to deal with the fact that they had an employee. Mr. Kelly, I just want to, just because it focuses on administrators, you could have other situations where it still could relate to the quality of medical care. In other words, if you had a doctor who was over-prescribing certain medications and the administrators failed to detect it, simply because it's focused on the administrators, wouldn't make it not a medical quality assurance review if it was looking at something such as over-prescribing medication, right? Well, certainly, but that's not this report. I don't want you to focus, I'm concerned that you focus on the fact that it looked at administrators. To me, it's more important what they were looking at as opposed to which particular people in the hospital they were looking at, right? Exactly. And part of the point here is that sexual abuse by employees is a problem that goes well beyond medical care. As Judge Wernstein noted, the report itself mentions cases of sexual abuse by non-medical IHS employees. The point of the report was to talk about how these problems occurred, regardless of the medical status of the employees, whether they're doctors or janitors or hospital administrators. IHS has to have the ability to ferret out sexual misconduct by its employees and get rid of those employees and refer to law enforcement. I think another key point here is that the Indian Health Service did not hire medical experts to do this review. There's no evidence that were former law enforcement officials. When they interviewed a doctor with firsthand knowledge of Weber's crimes, they did not ask him any questions about medical care. They asked him about administrative issues. This was a report that was focused on the administrative issues, the failures, the violations of law and policy that allowed Weber and other IHS employees to sexually abuse children without facing any penalty. Well, it was more than that, wasn't it? They kept transferring this guy. That's correct, Judge Pooler, and that's part of the misconduct by administrators that the Integritas report is all about. Rather than addressing the allegations of sexual abuse against Dr. Weber, officials in the Blackfeet Hospital simply transferred him to Pine Ridge. They made it somebody else's problem, and the abuse continued to occur for year after year, child after child, decade after decade. That is the focus of the report. It's not the focus on any medical care given to any Indian Health Service patient. It's on what went wrong administratively that allowed this, in this case, doctor, but other employees to sexually abuse children. I just want to highlight one of the things that Judge Gorenstein said. On this theme, Judge Gorenstein said that the report analyzes what he called, quote, the systematic bureaucratic failures demonstrated by the actions of administrators within the IHS. He concluded, and again, I quote, there's literally nothing in the report that could be characterized as an assessment of the quality of the medical care provided to IHS patients, period. He said that the question was not particularly close. We believe that a straightforward reading of Section 1675 excludes the Integritas report from its coverage. This is a report that is about an assessment of the quality of medical care. Integritas couldn't do an assessment of the quality of medical care because they didn't have the expertise to do so, and they didn't even try. They didn't ask medical questions of a doctor that they interviewed. They didn't, as far as we know, bring on any medical experts to review any actual medical care to any patient. Their review was focused on administrative issues, not medical care issues. What about the government relies on not just the medical care language, but patient safety? They say the statute refers to patient safety. This is obviously related to patient safety, so can you respond to that? Yes, Your Honor. The statute refers to patient safety as one of a review bodies can be looking at, but only in the context of medical quality. To the extent that this report is about patient safety, it's not in the context of medical quality. It's in the context of protecting against criminal conduct by IHS employees. That's not the kind of patient safety review that Section 1675 envisions. Again, the core requirement of the statute is that the review has to be of medical quality. The statute uses medical quality some two dozen times. You could have criminal behavior that does relate to medical quality, such as my example before of overprescribing opioids, for example, would be criminal, but would also relate to medical quality and care. It's not the fact it's criminal that separates it necessarily. That's correct, Your Honor. It's not the fact that it's criminal that separates it. It's the fact that the report is focused on an administrative problem. It doesn't matter in this case whether the sexual abusers were medical professionals or not. Indeed, the report mentions sexual abuse by non-medical personnel. That's what makes it confidential. What about the concern that the purpose of this is to encourage candid disclosure and that this will deter people when there are these types of investigations at hospitals from being candid? Do you want to respond to that? Certainly. I think that there shouldn't need to be a promise of confidentiality to encourage healthcare professionals and other employees of IHS to report criminal behavior, especially child sexual abuse. The evidence in the record from the doctor that they interviewed was that they did not promise in confidentiality. He did not request confidentiality. They didn't tell him to keep it secret when he called and asked whether he could talk about the interview. The need for confidentiality that section 1675 looks at is the evaluation of their colleagues' medical decisions. That's what the need of confidentiality is for, so that medical professionals are confident, are comfortable making judgments about the medical judgment calls that their colleagues make. It's not about providing confidentiality so people are more confident about the misconduct of administrators and not addressing criminal conduct. Absolutely. Some of the information that triggered the hiring of Integritas came from the Wall Street Journal. Isn't that correct? We believe so, Your Honor. The agency has not said specifically that the Wall Street Journal and frontline pieces were part of the genesis of the report, but certainly in terms of the timeline, the Wall Street Journal report came well before the Integritas folks started investigating. So they don't believe in irony anyway, so there's no sense pursuing that. Yeah, and I think another point here is that FOIA is meant to help inform the public about when the government messes up, and here the government messed up very, very badly. The Wall Street Journal helped bring that to light, to public light, and I think that the reason that the Integritas report should be made public is that people need to be able to hold accountable this agency and those officials in that agency that were responsible for this terrible, terrible tragedy. I see my time is about to expire. We have a... We have an alternative argument that the court below did not reach. We will stand on our papers on that, unless any of the court has any questions about that argument. Mr. Kelly, I have a very narrow question. The report's discussion of Webster's history of abusing its patients, can we agree that that is an assessment of the quality of medical care? I don't think so. I'm not asking you to agree to a final bottom line characterization, but can we agree on the narrow question of whether the discussion of Webster's history is an assessment of the quality of medical care? Your Honor, I don't think so, and here's why. The report goes through Webster's context, the bureaucratic misconduct by IHS officials that allowed that conduct to happen. Much of that conduct, if not most of it, occurred well outside of IHS facilities and not in a medical context whatsoever. The report needed to go through that history so that it was clear what went wrong, why administrators should have identified this problem and reacted to it years and years and decades earlier than they did. In that sense, it's not a review of the quality of medical care. I think everybody agrees that sexual abuse is not medical care. The government has reserved some time. Yes, Your Honor, thank you. I just want to first emphasize again that this assumption that sexual abuse is not a failure of medical care is simply incorrect. As Your Honor stated, the assessment of Webster's conduct is not just an assessment of the criminal conduct, it's an assessment of the failures. The report, as the District Court acknowledges, isn't simply a detailed history of Webster's conduct, but rather an assessment of what flaws at the facility allowed the harms to these patients to occur, what was the basis of this medical failure, and how to improve it going forward. That's what we see in this report, and that's why it's within the scope of 1675. What about the fact that there is a lot of references to non-medical employees, things that took place outside the facilities. Isn't that some indication that the focus is not medical care, per se? The principal focus of this report, as Your Honor is aware, is Webster's conduct and how it was allowed to harm these patients. That is the function of this report. Of course, in an assessment of the failure to provide medical care, Webster's conduct, other conduct at these facilities is relevant. It is relevant to determine where the failures were, but that does not make this an assessment of something other than medical care. I'll note, too, that IHS and the Office of Quality has the authority to conduct these medical quality assurance reviews. Their authority is not to, as I said before, criminally punish Webster. FBI has that authority. They can investigate the criminal behavior at issue, but what IHS is doing is investigating the threat to the medical care and how to improve the problems that created or enabled that flaw in medical care. I also just wanted to briefly respond to Plinkett's argument that the fact that the IHS tasked this contractor with this work identified the staff that would be best qualified to review the particular problems in medical care that were evidenced here. 1675 expressly acknowledges that in evaluating medical care, there are other review bodies that might be best suited to the task, depending on the flaw at hand. For example, it envisions that quality folks could be doing this work. It envisions that health resource management review bodies might be doing this work. In other words, simply because they are not doctors does not determine whether this falls within the scope of 1675. Thank you very much. We will adjourn. Madam Clerk. Thank you, Your Honor. Court is adjourned. Thank you, judges. I'll transfer you now. Thanks, Maria. You're welcome. Thank you.